James **BRONSTON**, Marie Ecton, Bonnie Jeffers, and Eula Hill, Plaintiffs,

v.

Jack **KEMP**, Secretary, Department of Housing & Urban Development, Defendant.

Civ. No. C–1–88–942.

United States District Court, S.D. Ohio, W.D.

Oct. 4, 1989.

(2) During the early 1980's, HUD acquired ownership of many failed subsidized housing projects. Plaintiffs James Bronston, Marie Ecton, Bonnie Jeffers, and Eula Hill resided at properties owned by HUD during 1984 and 1985. The properties were owned by HUD for periods ranging from three to seven months.

(3) From January 1, 1980 until June 16, 1983, tenants in HUD-owned projects within the geographic jurisdiction of the Cincinnati HUD office who did not have section 8 certificates were charged rent equal to 25% of their adjusted incomes pursuant to 24 C.F.R. § 290.17(b).[1]

(4) The Cincinnati HUD office requested and was granted waivers of 24 C.F.R. § 290.17(b), which set rent limits for tenants of HUD-owned housing, on every HUD-owned property within its jurisdiction after June 16, 1983 whenever the section 8 rent that tenants had been paying prior to HUD ownership was higher than the rent prescribed in § 290.17(b).

(5) As a result of such waivers, between June 1983 and September 18, 1988, on which date § 290.17(b) was amended, HUD charged plaintiffs rents in excess of 25% but less than 30% of their incomes in accordance with the formula prescribed in 42 U.S.C. § 1437a.

(6) Plaintiffs did not receive rent rebates under 24 C.F.R. § 813.110(f), which granted rebates to tenants residing in housing assisted under section 8 of the United States Housing Act of 1937 based on amendments to 42 U.S.C. § 1437a.

Sue Livensparger, Edward Stokan, Cincinnati, Ohio, for plaintiffs.

Gerald Kaminski, Asst. U.S. Atty., Cincinnati, Ohio, Edward Eitches, Washington, D.C., for defendant.

## ORDER

CARL B. RUBIN, Chief Judge.

This matter is before the Court on cross-motions for summary judgment. In accordance with Fed.R.Civ.P. 52, the Court does hereby set forth its Findings of Fact, Opinion, and Conclusions of Law.

## FINDINGS OF FACT

(1) Defendant Samuel Pierce is the director of the Department of Housing and Urban Development (HUD).

## OPINION

### STATUTES AND REGULATIONS IN ISSUE

Plaintiffs bring claims under 12 U.S.C. § 1701z–11, the United States Housing Act of 1937 (42 U.S.C. § 1437a), and HUD's implementing regulations, specifically 24 C.F.R. § 290.17(b).

Title 12 U.S.C. § 1701z–11 requires HUD to manage and dispose of multifamily housing projects in a manner that will further

1. "Section 8" refers to the United States Housing Act of 1937, 42 U.S.C. § 1437f.

the goal of preserving and making such housing available to low and moderate-income persons and minimizing involuntary displacement of tenants.

Prior to its amendment in 1979, 42 U.S.C. § 1437a provided that the rent for any dwelling unit as defined in that chapter shall not exceed 25% of the family's income as defined by the Secretary of HUD. The statute was amended in 1979 to establish a limit of 25% of family income in the case of a very low income family or 30% of such income for other families. In 1981, § 1437a was once again amended to provide that, with certain exceptions, a family shall pay as rent for a dwelling unit assisted under that chapter the highest of:

(A) 30% of the family's monthly adjusted income;

(B) 10% of the family's monthly income; or

(C) if the family is receiving payments for welfare assistance from a private agency, the portion of such payments the agency has specifically designated to meet the family's housing costs.

Title 24 C.F.R. § 290.17(b), promulgated on October 1, 1979, applies to HUD-owned multi-family housing projects. See 24 C.F.R. § 290.1. It originally provided, in pertinent part, that:

> All tenants in formerly subsidized projects shall be charged the lesser of 25% of income as determined pursuant to section 8 of the U.S. Housing Act of 1937, as amended, or the rent established for the unit in paragraph (a) of this section, provided that families who qualify to pay a lesser percentage of income pursuant to section 8 shall not be required to pay more than that percentage.

Section 290.17 was amended effective September 19, 1988, to provide that subsidized rents would be based on 30%, rather than 25%, of adjusted income. 53 Federal Register 27158 (July 19, 1988).

Defendant claims that § 290.17(b) is not statutorily mandated, so that HUD was entitled to waive the regulation pursuant to 24 C.F.R. § 290.7. Section 290.7 provides that:

> Upon completion of a determination and finding of good cause by the Assistant Secretary for Housing–Federal Housing Commissioner or his or her designee, HUD may waive any provision of this part in any particular case subject only to statutory limitations. Each waiver shall be in writing supported by documentation of the facts and reasons which formed the basis for the waiver.

## IMPLIED RIGHT OF ACTION

The threshold issue with regard to plaintiffs' claims under 42 U.S.C. § 1437a and 12 U.S.C. § 1701z–11 is whether plaintiffs have an implied right of action under those statutes. Plaintiffs claim such a right of action under § 1437a.

■ To establish an implied private right of action under a federal statute, plaintiffs must demonstrate that Congress affirmatively contemplated private enforcement of the statute at the time of its enactment. *Victorian v. Miller*, 813 F.2d 718, 721 (5th Cir.1987) (citing *Merrill Lynch, Pierce, Fenner & Smith v. Curran*, 456 U.S. 353, 377–78, 102 S.Ct. 1825, 1838–39, 72 L.Ed.2d 182 (1982); *Cannon v. U. of Chicago*, 441 U.S. 677, 688, 99 S.Ct. 1946, 1952, 60 L.Ed.2d 560 (1979)). The focus of the Court's inquiry is the intent of the legislature. *Curran*, 456 U.S. at 377, 388, 102 S.Ct. at 1838, 1844.

■ Plaintiffs cite *Howard v. Pierce*, 738 F.2d 722 (6th Cir.1984) for the proposition that an implied right of action exists under § 1437a. *Pierce* involved a challenge by tenants of low-income housing to rent calculations made pursuant to § 1437a. Plaintiffs sought only injunctive and declaratory relief. The Court found an implied right of action, but qualified its holding by expressing serious doubt that an implied right of action for damages under § 1437a would be appropriate. *Id.* at 730. Plaintiffs have not demonstrated that Congress affirmatively contemplated an implied right of action for damages under § 1437a. Nor is there an implied right of action for damages under 12 U.S.C. § 1701, et seq. *Chase v. Theodore Mayer Bros.*, 592 F.Supp. 90 (S.D.Ohio 1983) (Porter, Sr.

J.). Therefore, plaintiffs have an implied right of action only with regard to their requests for declaratory and injunctive relief under §§ 1437 and 1701z–11.

## EXCESSIVE RENT CLAIMS

Plaintiffs claim that HUD charged them rents in excess of 25% of their adjusted incomes during the period HUD owned the buildings in which plaintiffs resided. They contend that in doing so, defendant violated § 1701z–11, § 1437a, and § 290.17.

■ Validly promulgated administrative regulations have the force and effect of law. *Frisby v. U.S. Dept. of Housing and Urban Development,* 755 F.2d 1052, 1055 (3d Cir.1985). An agency is bound by its own regulations. *United States v. Nixon,* 418 U.S. 683, 695–96, 94 S.Ct. 3090, 3100–01, 41 L.Ed.2d 1039 (1974); *Superior Saving Ass'n. v. City of Cleveland,* 501 F.Supp. 1244, 1249 (N.D.Ohio 1980). However, an administrative regulation that conflicts with a parent statute is ineffective. *United States v. Vogel Fertilizer Co.,* 455 U.S. 16, 102 S.Ct. 821, 823, 70 L.Ed.2d 792 (1982). The reviewing court must reject administrative constructions of a statute that are inconsistent with the statutory mandate. *F.E.C. v. Democratic Senatorial Campaign,* 454 U.S. 27, 32, 102 S.Ct. 38, 42, 70 L.Ed.2d 23 (1981).

■ The parties disagree as to whether § 1437a applies to HUD-owned housing. The Court will assume for purposes of this portion of its opinion that § 1437a does so apply, since plaintiffs' claims under § 1437a must otherwise fail. Prior to § 290.17(b)'s amendment in 1988, the regulation was clearly inconsistent in pertinent respects with § 1437a. Section 290.17 imposed a rent limit of 25% of adjusted income, in contrast to the 30% limit imposed under § 1437a. The Court is bound by the plain language of § 1437a and must defer to the rent limit imposed under the statute. Because it is undisputed that HUD never charged plaintiffs in excess of 30% of their adjusted incomes, plaintiffs' claims under § 1437a must fail. The Court likewise finds no violation of 12 U.S.C. § 1701z–11 resulting from HUD's charging rents above 25% but below 30% of plaintiffs' adjusted incomes.

## ADMINISTRATIVE PROCEDURE ACT

■ Plaintiffs claim that by permitting waivers of § 290.17 in the case of every HUD-owned property within the jurisdiction of the Cincinnati HUD office, HUD attempted to modify the regulation without following proper rule-making procedures under the Administrative Procedure Act (APA), 5 U.S.C. § 553(b, c). These provisions require that notice be given as to proposed rule-making and that interested individuals be granted an opportunity to comment. Failure to abide by the notice requirement of § 553(b) invalidates a substantive regulation. *Chrysler Corp. v. Brown,* 441 U.S. 281, 313, 99 S.Ct. 1705, 1723, 60 L.Ed.2d 208 (1979).[2] An agency may not publish regulations pursuant to the APA and at the same time produce *ad hoc* unpublished decisions. *Morton v. Ruiz,* 415 U.S. 199, 232, 94 S.Ct. 1055, 1073, 39 L.Ed.2d 270 (1974).

Plaintiffs further contend that HUD's action was arbitrary, capricious and an abuse of discretion. Where Congress has granted an agency discretion, the reviewing court may determine only whether the agency has exceeded statutory authority or acted arbitrarily. 5 U.S.C. § 706. An agency action may not be set aside under 5 U.S.C. § 706(2)(A) as arbitrary and capricious if it is rational, based on relevant factors, and within the agency's statutory authority *Motor Veh. Mfgrs. Assn. v. State Farm Mut.,* 463 U.S. 29, 42–43, 103 S.Ct. 2856, 2866–2867, 77 L.Ed.2d 443 (1983). In determining whether agency action is within the scope of the agency's statutory authority, the court must construe the relevant statute to determine the scope of the agency's authority and discretion and to

**2.** Section 553(b) applies only to substantive or legislative rules, not interpretative rules. *State of Ohio Dept. of Human Services v. U.S. Dept. of Health,* 862 F.2d 1228, 1233 (6th Cir.1988). The parties have not addressed the nature of § 290.17. The Court will assume for purposes of this opinion that it is a substantive rule.

determine whether the challenged action lies within that scope. *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 415–16, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971).

It is undisputed that HUD's Cincinnati office requested and was granted waivers of § 290.17 on a case-by-case basis for every formerly subsidized project that was acquired by HUD within the geographic jurisdiction of the Cincinnati office between June 16, 1983 and September 18, 1988. During this period, HUD never charged in excess of 30% of the family adjusted income. The parties have submitted copies of waiver requests made by the Cincinnati HUD office. HUD listed as the reasons for granting such waivers that to temporarily reduce rents to 25% of tenants' income during periods of HUD ownership would be an unnecessary expense to the federal government and would be inconsistent with existing requirements for section 8 tenants.[3]

■ The Court finds that HUD's decision to grant waivers of § 290.17 for formerly subsidized projects in the Cincinnati jurisdiction was not arbitrary, capricious and an abuse of discretion, nor in excess of HUD's statutory authority. HUD's action was consistent with the mandate of § 1437a. Additionally, HUD's grounds for granting the waivers withstand scrutiny under the governing standard. HUD's action brought the rental rates for HUD-owned housing to the same level as rental rates for lower income housing assisted under the United States Housing Act of 1937. HUD attempted to avoid the confusion that would be engendered by adjusting rents during brief periods of HUD ownership of formerly subsidized housing by applying the same rates. Because the Court finds that HUD's action was not arbitrary, capricious, and an abuse of discretion, nor

outside the agency's statutory authority, the Court will not disturb HUD's actions.

■ With regard to plaintiffs' claim that HUD eschewed APA procedures by granting waivers of § 290.17 rather than by promulgating new regulations in accordance with APA procedures, it appears that the better course of action would have been for HUD to promptly amend § 290.17 to comport with the amendments to § 1437a. However, HUD's failure to do so does not invalidate HUD's actions since such actions were consistent with § 1437a.

### RENT REBATE CLAIMS

Plaintiffs claim that they are entitled to rent rebates pursuant to 24 C.F.R. § 813.110(f). By its terms, that provision applies to tenants in housing assisted under section 8 of the 1937 Act. 24 C.F.R. § 813.101. Plaintiffs claim that § 813.110(f) likewise applies to them since the rents charged them were based on a percentage of their incomes as determined pursuant to section 8 of the 1937 Act. 24 C.F.R. § 290.17(b).

Section 813.110(f) was promulgated as the result of 1983 amendments to 42 U.S.C. § 1437a, which increased the number and amount of allowable deductions which could be subtracted from annual income to calculate the adjusted income figure. HUD originally determined that the new rules governing deductions were to be implemented on October 1, 1984. HUD subsequently decided to delay implementation until on or after August 1, 1985.[4] HUD determined that tenants residing in section 8 housing whose rents would have decreased as a result of the amended deductions for the period from October 1, 1984 to on or after August 1, 1985 would receive a rent rebate based on rent recalculations made using the amended definitions of an-

---

**3.** Section 8 tenants are those individuals who reside in dwelling units assisted under 42 U.S.C. § 1437f.

**4.** Pursuant to § 206(d) of Pub.L. 98–181, HUD was granted authority to delay implementation of procedures for determining rents or contributions by a tenant occupying housing assisted

under the 1937 Act in limited circumstances. These circumstances were if the Secretary of HUD determined immediate application would be impracticable, would violate the terms of existing leases, or would result in extraordinary hardship for any class of tenants.

nual income and adjusted income contained in § 1437a. 24 C.F.R. § 813.110(f).

HUD declined to apply the rent rebate provisions to tenants in HUD-owned housing. (See Memorandum re Applicability of Rent Rebate Rule to Tenants in HUD-owned Projects (Doc. no. 12, Exh. 13)). HUD based its determination on the following factors: (1) whereas section 8 tenants would be penalized as a result of delay in implementing the amended deductions in view of an increase in their rent contribution from 25% to 30% of adjusted income, the same consideration did not apply to tenants of HUD-owned housing since HUD had not yet increased these tenants' rent contributions to 30%; (2) tenants of HUD-owned housing are not entitled to the rights afforded section 8 tenants; and (3) 24 C.F.R. § 290.17, which governs rents to be charged tenants of HUD-owned housing, requires only that HUD utilize methods of determining *income* under section 8, not rent, whereas § 813.110(f) is essentially a method of determining rent. Defendant further contends that HUD was justified in not applying the rent rebate provisions to plaintiffs since HUD-owned property remained in HUD's possession for relatively short periods of time and rent rebates were to be credited against future rent payments.

The Court must presume the validity of agency action. *Nat'l—Southwire Aluminum Co. v. U.S. EPA*, 838 F.2d 835, 838 (6th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 390, 102 L.Ed.2d 379 (1988) (*citing Citizens to Preserve Overton Park*, 401 U.S. at 415–16, 91 S.Ct. at 823). If a statute is silent or ambiguous with respect to the precise issue involved, the Court must determine whether the agency's action is based on a permissible construction of the statute. *Id.* (*citing Chevron U.S.A. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984)). The Court may not substitute its judgment for a reasonable interpretation made by an agency. *Id.* The Court should defer to the construction of a statute by those charged with its execution absent "compelling indications" the

such construction is wrong. *Id.* When the construction of an administrative regulation rather than a statute is in issue, deference is even more clearly in order. *Id.* (*quoting Compton v. Tenn. Dept. of Public Welfare*, 532 F.2d 561, 565 (6th Cir. 1976)) (*quoting Udall v. Tallman*, 380 U.S. 1, 16–17, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965)).

■ The Court agrees with defendant that, by its terms, § 813.110(f) does not apply to tenants of HUD-owned housing. Nonetheless, the Court finds that defendant's failure to apply the rent rebate provisions to plaintiffs is not a reasonable interpretation of the pertinent regulations and is arbitrary, capricious, and an abuse of discretion. First, HUD's contention that the rebate provision does not apply to plaintiffs because it is a method of determining rent, not income, is not rational. The rent rebates under § 813.110(f) are calculated, in part, on the basis of annual income and the deductions from income listed under § 1437a(b). Therefore, whether § 813.110(f) is based on calculations of income or rent is a matter of semantics that does not bear on the applicability of the rent rebate provision to tenants in HUD-owned housing.

Second, HUD's concern over unfair treatment of section 8 tenants who had been subjected to rent contribution increases applies equally to plaintiffs. HUD applied the same rent contribution increases to plaintiffs by obtaining waivers of § 290.17. It is arbitrary and capricious for HUD to require plaintiffs to make rent contributions of over 25% of their adjusted incomes, but to deny rent rebates to them on the ground that a regulation HUD did not follow limited their rent contributions to 25% of adjusted income.

Furthermore, defendant has stressed that HUD sought to achieve uniformity of rental rates for section 8 tenants and tenants of HUD-owned housing. See also 53 Federal Register 27159 (July 19, 1988). By granting rent rebates only to section 8 tenants, HUD acted contrary to its stated goal. It is inconsistent for HUD to argue on the one hand that it applied the 30%

income limitation to both section 8 tenants and tenants of HUD-owned housing in order to achieve uniformity, but to maintain on the other hand that tenants of HUD-owned housing were not entitled to rent rebates because they were not subject to the same rules that govern section 8 tenants.

Finally, because HUD applied the 30% limitation to both groups of tenants, the allegedly short period of time for which HUD owned the housing in which plaintiffs resided should not effect the feasibility of granting rent rebates to plaintiffs. Such rebates could easily be credited against rent payments made by plaintiffs after HUD's disposition of such housing.

In short, the record demonstrates that HUD applied rules governing section 8 tenants to tenants of HUD-owned housing when to do so was beneficial to HUD, but refused to apply such rules when to do so was detrimental to the agency. HUD's actions were inconsistent and are not supported by rational justifications. For these reasons, the Court finds that HUD's decision not to apply the rent rebate provisions to tenants of HUD-owned housing as to whom § 290.17 had been waived is not entitled to deference, and is arbitrary, capricious, and an abuse of discretion.

### *Relief*

■ An issue remains regarding the relief to which plaintiffs are entitled. Plaintiffs seek restitution of excess rent paid as a result of HUD's delayed implementation of the increased deduction allowances. As indicated above, § 1437 grants an implied right of action only as to injunctive and declaratory relief. Moreover, the APA waives the sovereign immunity of the United states or its officers only as to relief other than "money damages". 5 U.S.C. § 702. However, an action seeking an order that one party pay money is not necessarily an action for "money damages". *Bowen v. Massachusetts*, —— U.S. ——, 108 S.Ct. 2722, 2732, 101 L.Ed.2d 749 (1988). "Money damages" refers to compensation for injury to person, property or reputation. *Id.* 108 S.Ct. at 2735. Con-

versely, an equitable action for specific relief is an attempt to obtain the very thing to which plaintiff was entitled. *Id.* at 2732. The fact that the very thing to which plaintiff was entitled is money does not transform the relief sought into money damages. *Id.*

The Court finds that plaintiffs' request for rent rebates is in the nature of an "equitable suit for specific monetary relief." *Id.* at 2735. Plaintiffs are seeking recovery of funds to which they are entitled under the applicable regulations, rather than compensation for injury to person, property or reputation. Although the relief sought will require the payment of federal monies, this does not alter the nature of plaintiffs' claim. Thus, there is no bar to plaintiffs' recovery of the relief sought.

### CONCLUSIONS OF LAW

(1) Plaintiffs have an implied right of action for injunctive and declaratory relief under 42 U.S.C. § 1437a. *Howard v. Pierce*, 738 F.2d 722 (6th Cir.1984).

(2) Defendant did not violate 12 U.S.C. 1701z–11 and 42 U.S.C. 1437a and its implementing regulations by charging plaintiffs rents in excess of 25% of their adjusted income but less than 30% of their adjusted incomes.

(3) Defendant did not violate the Administrative Procedure Act by charging plaintiffs rents between 25% and 30% of their adjusted incomes.

(4) Defendant's determination not to apply 24 C.F.R. § 813.110(f) to tenants of HUD-owned housing as to whom 24 C.F.R. § 290.17 had been waived was arbitrary, capricious, and an abuse of discretion and is not entitled to deference.

(5) Plaintiffs' request for restitution of rent rebates is in the nature of an "equitable suit for specific monetary relief" to which there is no bar to recovery. *Bowen v. Massachusetts*, —— U.S. ——, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988).

(6) Plaintiffs are entitled to recover rent rebates retroactive to October 1, 1984 cal-

culated in accordance with the provisions of 24 C.F.R. § 813.110(f).

IT IS HEREBY ORDERED that summary judgment is granted in part in favor of defendant and in part in favor of plaintiffs in accordance with the foregoing.

IT IS SO ORDERED.